**SDV**
SAXE DOERNBERGER & VITA, P.C.

March 17, 2014

Judge Nicholas G. Garaufis
Magistrate Judge Vera M. Scanlon
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Matter:   **433 Main Street Realty, LLC and Cord Meyer Development Company v. Darwin National Assurance Company,**
      Case No.:   14-cv587-NGG-VMS
      Reference:   **In re Hurricane Sandy Cases**, No. 14-MC-41

Dear Judge Garaufis and Magistrate Judge Scanlon:

We represent the Plaintiffs, 433 Main Street Realty, LLC and Cord Meyer Development Company, in the above-referenced action. Pursuant to the Case Management Order No. 1 entered in the In re Hurricane Sandy Cases matter, we are writing to set forth the legal basis for Plaintiffs' bad faith causes of action.[1]

### I.   Factual Background

Plaintiffs are the owners of a project for construction of a proposed 3-story, 92,500 square foot residential building in Port Washington, New York (the "Project"). The Project was in its initial stages when Superstorm Sandy struck the area on October 29, 2012.[2]

Video surveillance from the Project site showed that high, gusting winds began around 8:00 am on October 29.[3] By 10:15 am, the winds had blown down fencing and some of the form work, and had torn the waterproof membrane from the form work within the foundation. Thereafter, water entered the Project site and began filling up the excavated foundation. Craig

---

[1] We recognize that this letter has been submitted past the deadline set forth in the Case Management Order. However, due to an internal technical error and oversight, we did not receive notification that the Case Management Order was entered until March 12, 2014 – already several days past the deadline. We respectfully request that the Court consider our letter despite this unintentional error.

[2] Specifically, at the time of the storm, the Project site/foundation had been excavated, plywood forms had been placed, rebar had been installed within those forms and concrete poured around the rebar, and a waterproof membrane was in place.

[3] A copy of the surveillance footage is available upon the Court's request.

Nelson, the superintendent for the construction manager confirmed, in writing, that the water came from a backup of the storm sewer system.[4] See Attachment A.

Defendant Darwin National Assurance Company ("Darwin") issued a Commercial Inland Marine policy to Plaintiffs covering the Project during the relevant time period (the "Policy").[5] The Policy provides coverage for "direct physical loss or damage caused by a covered peril to 'buildings or structures' while in the course of construction, erection, or fabrication." One of the key issues in this case is which deductible applies to the loss. Plaintiffs contend that the Policy's general $10,000 deductible applies because the Policy explicitly provides coverage for direct physical loss or damage caused by or resulting from water that backs up through a sewer or drain,[6] and the evidence confirms that the damage was the result of the sewer backing up and overflowing. Despite the evidence, Darwin alleged that the damage was caused by flood, and claimed that the $250,000 flood deductible applies.[7]

Plaintiffs promptly notified Darwin of the damage sustained to the Project. Darwin[8] sent a letter, dated January 9, 2013, noting that the loss was subject to the Policy's $250,000 flood deductible. Plaintiffs contested Darwin's application of the flood deductible, but Darwin refused to change its position. See Attachment B for correspondence between Darwin and Plaintiffs pertaining to the claim.

To be clear, until the filing of the instant litigation, Darwin agreed that Plaintiffs' claim is covered by the Policy and did not dispute that Plaintiffs are entitled to payment for the damage in excess of the applicable deductible. However, since the date of the loss, Darwin still has not issued any payment for the repairs. Darwin's conduct is especially egregious since the Plaintiffs are entitled to payment, notwithstanding the deductible dispute. Indeed, Plaintiffs have submitted invoices to Darwin showing that its repair costs well-exceed even the $250,000 deductible, were it to apply.

---

[4] The surveillance footage also shows water entering the Project site from across the street, which is uphill from the Project. There are several sewer drains across the street/uphill from the Project site which Plaintiffs contend was the cause of the water entering the site.

[5] A copy of the Policy was included as Exhibit A to Plaintiffs' Complaint.

[6] The Policy provides: "'We' cover direct physical loss or damage to covered property caused by or resulting from: 1) water or waterborne material that backs up, overflows or is otherwise discharged through a sewer or drain, sump or septic tank; or 2) water or waterborne material below the surface of the ground, including but not limited to water or waterborne material that exerts pressure on or flows, seeps, or leaks through or into a covered 'building or structure', sidewalk, driveway, foundation, swimming pool, or other structure." Policy at Builders' Risk Coverage Scheduled Jobsite Form Comprehensive Form, Supplemental Coverages.

[7] The Policy defines "flood" as "[a]n overflowing or inundation by water of an area that was previously and normally dry or not covered by water, whether caused artificially or naturally, by human or animal forces or by an act of nature. 'Flood' includes, but is not limited to: a. overflow of inland tidal waters . . . whether driven by wind or not, including but not limited to storm surge; . . ." Policy at Builders' Risk Coverage Scheduled Jobsite Form Comprehensive Form, Definitions.

[8] Darwin used a claims administrator to communicate with Plaintiffs. For purposes of this letter and this litigation, Plaintiffs do not draw a distinction between Darwin and its claims administrator.

In June 2013, after almost eight months had elapsed from Superstorm Sandy with no payment by Darwin, Plaintiffs notified Darwin of their intention to file litigation. In response, Darwin suggested a meeting at the Project to walk the site and discuss the claim. Consequently, Plaintiffs did not file suit at that time and instead scheduled the suggested meeting. The meeting was held in mid-July with representatives of Plaintiffs and Defendant in attendance. Darwin's claims adjuster expressed surprise at the extent of the loss claimed as well as the facts of the loss, and promised that he would expedite resolution of the matter for Plaintiffs.

After the meeting, and pursuant to Darwin's request, Plaintiffs re-sent a number of documents to Darwin in support of their claim. Plaintiffs also gathered significant documentation concerning the Site and provided it to Darwin. In general, this information supported Plaintiffs' claim that the water that filled the Project's foundation flowed downhill from across the street (i.e., from the sewers) and was not the result of storm surge from Manhasset Bay. This information included: (1) the surveillance footage from the day of the storm; (2) the written statement by Craig Nelson which explained that the site was inundated due to "back up of existing storm sewer system located under Main St[reet]"; (3) topographical information pertaining to the Project site; (4) weather data from the day of the storm; and (5) other documentation (i.e., engineers reports) setting forth the state of the sewer system in are adjacent to the Project site. See Attachment B.

What followed from Darwin was a series of piecemeal document requests over the course of the next four months. Plaintiffs diligently provided support for their claim, including invoices from relevant contractors and copies of checks representing payments to those contractors for replacing/repairing the damaged work. However, as of November 2013, Darwin continued to request unreasonably specific and unnecessary documentation for Plaintiffs' straightforward claim. Darwin's conduct and communications demonstrate that it never intended to honor its promise to speed resolution of the claim. Instead, Darwin has engaged in delaying and misleading tactics that have forced Plaintiffs to fund repairs to the Project out of its own pocket.

To date, Darwin has issued no payments on Plaintiffs' claim.

II.   Analysis

In light of Darwin's conduct, Plaintiffs filed the instant suit against them in New York state court. The complaint seeks a declaratory judgment and alleges causes of action based on breach of contract, breach of the covenant of good faith and fair dealing, and violation of New York State General Business Law § 349. These claims are sufficiently and adequately pled and, moreover, are legally sound such that they should not be dismissed.

First, Plaintiffs claim that Darwin breached the covenant of good faith and fair dealing is legally valid. "As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 194, 886 N.E.2d 127 (2008). Although, as noted by this court in Funk v. Allstate Insurance Co., "[c]laims of breach of the implied covenant [of good faith and fair dealing] must be premised on a different set of facts from those underlying a claim for

breach of contract,"[9] here, Plaintiff alleges that Darwin's conduct goes beyond simply breaching its contract of insurance with Plaintiffs. Specifically, the Complaint alleges that Darwin mishandled the claim and unreasonably delayed payment. See Complaint at ¶ 29. This conduct goes above and beyond the claimed breach of contract alleged by Plaintiffs, especially in light of Darwin's promise to expedite adjustment of the claim. In addition, Darwin continues to insist that the water which inundated the site came from storm surge via Manhasset Bay. Plaintiffs have supplied Darwin with a wealth of evidence to the contrary, including eyewitness testimony, weather data, site information, and surveillance footage. Plaintiffs allege that Darwin's version of the facts informs its decision to apply the $250,000 flood deductible. See Complaint at ¶ 29.(c).

Likewise, Plaintiffs claim that Darwin violated Section 349 is sufficiently pled. "To state a claim under Section 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Dufficy v. Nationwide Mut. Fire Ins. Co., No. 13-CV-6010(SJF)(AKT), 2013 U.S. Dist. LEXIS 170368 (E.D.N.Y. Dec. 2, 2013). Plaintiffs' Complaint clearly alleges each of these factors. See Complaint at ¶¶ 32-35. It is Plaintiffs' contention that Darwin acted misleadingly in promising that it would take another look at the claim and expedite payment – indeed, the months following the July meeting when that promise was made suggest that Darwin was simply trying to drag out the claims process even further. In light of all the facts and circumstances surrounding Darwin's handling of the claim, Plaintiffs have a valid basis for asserting a violation of Section 349.

### III.  Conclusion

For the foregoing reasons, Plaintiffs respectfully request that its Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing and its Fourth Cause of Action for Violation of the New York General Business Law § 349 be allowed to remain in its Complaint.

Very truly yours,

SAXE DOERNBERGER & VITA, P.C.

/e/ Jeremiah M. Welch
Jeremiah M. Welch
Direct: (203) 287-2116
jmw@sdvlaw.com
Theresa A. Guertin
Direct: (203) 287-2119
tag@sdvlaw.com

---

[9] Funk v. Allstate Ins. Co., No. 13-CV-5933(JS)(GRB), 2013 U.S. Dist. LEXIS 177799, at *12 (E.D.N.Y. Dec. 13, 2013), quoting Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012).

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of March 2014, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Jeremiah M. Welch
Jeremiah M. Welch, Esq.